**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.H. and C.H.**

**No. 21-0101** (Mercer County 18-JA-199-WS and 20-JA-015-WS)

**MEMORANDUM DECISION**

Petitioner Mother R.T., by counsel Wyclif S. Farquharson, appeals the Circuit Court of Mercer County's January 8, 2021, order terminating her parental, custodial, and guardianship rights to B.H. and C.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Thomas Janutolo, filed a response on the children's behalf in support of the circuit court's order. Intervening foster parents J.H. and J.H., by counsel Jennifer Dempsey Meeteer, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2017, the DHHR filed a child abuse and neglect petition alleging that petitioner had abused and neglected her three oldest children. These children are not at issue in this appeal. The DHHR alleged that petitioner had threatened to physically harm one of the children and the father of the children. The children disclosed prior domestic violence between petitioner and their father and disclosed witnessing petitioner abusing controlled substances. The DHHR also alleged that petitioner had untreated mental health issues and failed to properly

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

supervise the children. In December of 2017, petitioner stipulated to these allegations. The circuit court adjudicated her as an abusing parent of these children. Petitioner moved for a post-adjudicatory improvement period, and the circuit court granted the motion.

In October of 2018, the DHHR amended the petition to include then two-month-old B.H. as an infant respondent. This child briefly lived with petitioner and his father,[2] upon agreement of the DHHR. The DHHR alleged that B.H.'s father admitted to the investigating Child Protective Services ("CPS") worker that he and petitioner were engaging in domestic violence while the child was in the home. The DHHR also alleged that that the family home did not have electricity or running water and was in a poor condition, which threatened the child's safety. B.H. was removed from petitioner's care and placed with the respondent foster parents.

Petitioner stipulated to the allegations regarding B.H. in December of 2018, and the circuit court adjudicated petitioner as an abusing parent of that child. Notably, petitioner voluntarily relinquished her custodial rights of her three older children on this date. Those children were placed in the custody of their biological father and were dismissed from the proceedings. Petitioner moved for a post-adjudicatory improvement period, which was later granted in January of 2019.

In April of 2019, the circuit court held a review hearing. Per the DHHR's court summary, petitioner had not fully participated in her improvement period. In particular, petitioner's visitation with B.H. was "sporadic" as she failed to maintain contact with the visitation provider to schedule visits. The DHHR further reported that petitioner did not have adequate housing and continued to have unresolved mental health issues. Despite this report, the DHHR did not oppose continuation of petitioner's improvement period.

The circuit court held a subsequent review hearing in July of 2019. The DHHR explained in its summary to the court that petitioner had obtained new housing but that it was not safe or suitable for B.H. The DHHR reported that petitioner agreed to obtain different housing, but, as of the review hearing, petitioner was homeless with only her vehicle for shelter. Further, the DHHR reported that petitioner inconsistently visited with the child and that the last visit had occurred on or around June 3, 2019. According to the DHHR, petitioner "periodically" met with service providers for adult life skills and parenting classes but missed sessions when the father was unable to attend.

In November of 2019, the circuit court granted petitioner a post-dispositional improvement period. Additionally, B.H.'s foster parents moved to intervene, and the circuit court granted that motion. In January of 2020, the respondent foster parents filed a motion to terminate petitioner's improvement period and her parental rights to B.H.

The DHHR filed a supplemental child abuse and neglect petition in February of 2020. It alleged that C.H. was born premature at thirty-two weeks of gestation and remained in the

---

[2]B.H.'s father is not the father of petitioner's three older children.

hospital's neonatal intensive care unit ("NICU") after petitioner was discharged from the hospital. The DHHR alleged that petitioner and the father were staying at the Ronald McDonald House, which was located directly across the street from the hospital. Despite her proximity to the child, petitioner only visited C.H. "an hour or so" per day immediately following the child's birth and did not visit the child for two consecutive days at one point during the child's hospital stay. The DHHR alleged that the staff at the Ronald McDonald House directed petitioner to visit the child or leave the house for violation of the house rules. The DHHR further reported that petitioner was easily agitated by hospital staff while visiting the child in the hospital. Based on the reports from petitioner's contact with hospital personnel, the DHHR alleged that petitioner's mental health issues were unresolved. Finally, the DHHR alleged that petitioner stated to the respondent foster mother that if anyone attempted to remove C.H. from petitioner's care, then "that person would be laid out [on] the floor" and petitioner would be in handcuffs.

In February of 2020, the circuit court conducted a hearing to review petitioner's improvement period and serve as a preliminary hearing on the supplemental petition. Ultimately, the circuit court set an adjudicatory hearing in March of 2020, which was later continued due to the COVID-19 pandemic and resulting judicial emergency. C.H. was placed with B.H. in the care of the respondent foster parents.

The circuit court held the adjudicatory hearing on the supplemental petition in October of 2020. Upon the agreement of the parties, the circuit court heard evidence related to the allegations of the supplemental petition as well as petitioner's progress in remedying the conditions of abuse and neglect. The DHHR presented testimony of the CPS worker assigned to petitioner. She testified that petitioner did not notify the DHHR when C.H. was born, forcing the worker to call multiple West Virginia hospitals in order to discover the child's birth and ascertain his safety. The worker also testified that petitioner failed to keep consistent contact with C.H. while he was treated in the NICU. She explained that the DHHR had concerns that petitioner had failed to remedy the conditions of abuse and neglect to which she stipulated in December of 2018, regarding her neglect of B.H. The CPS worker testified that petitioner had adequate housing for some time, but as recently as August of 2020, had received an eviction notice for nonpayment of rent. Additionally, the worker stated that petitioner was unable to pay for utilities. One of petitioner's service providers testified that she instructed petitioner on how to budget and believed that petitioner had sufficient funds to meet her needs. The provider testified that, despite two years of instruction, petitioner continued to mismanage her resources and be unable to meet her basic needs, such as rent and utilities.

The circuit court also heard evidence that petitioner continued to exhibit behaviors that were indicative of unresolved mental health issues and domestic violence. For instance, one of petitioner's service providers testified that petitioner was easily aggravated, even with the children. The provider testified that petitioner had called her names, yelled at her, and was generally hostile towards her. The provider also stated that petitioner became easily aggravated with the children "if [the children] would cry or . . . if [a child] would drop something." The circuit court heard evidence that petitioner was inconsistent with visitation throughout the proceedings. One provider testified that petitioner would miss visits with the children for trivial reasons, such as the weather being too cold, and would miss visitations without explanation. The visitation provider stated that petitioner would often not provide necessities for the infant C.H.,

3

like baby-formula, during visitation and would become aggravated when the respondent foster parents did not provide those necessities. After two years of services, the providers agreed that petitioner was not prepared for overnight unsupervised visitations with the children.

Ultimately, the circuit court adjudicated petitioner as an abusing parent of C.H. due to her inability to provide the child suitable housing, which it found was not the result of a lack of financial means. The circuit court also found that the child was neglected due to the volatility of petitioner's relationship with the father and both parents' untreated mental illnesses. Finally, the circuit court deferred ruling on disposition for B.H., deciding instead to determine the ultimate disposition of both children at a later date.

The circuit court held the final dispositional hearing in December of 2020. Per a DHHR summary prepared for the court, petitioner had failed to participate in services, including visitation with the children, since the October of 2020 adjudicatory hearing. The DHHR reported that petitioner would fail to respond in a timely manner to providers or not respond at all to attempted contacts. At the hearing, the circuit court heard testimony from a CPS worker and from petitioner and also incorporated the evidence presented at the adjudicatory hearing.[3] It found that petitioner had been "continually provided services . . . since 2017," but she made "little to no progress during the case." According to the circuit court's findings, petitioner "suffer[ed] from serious mental health issues that are essentially untreated," or received "cursory treatment" at best. The circuit court found that when petitioner seeks treatment "[s]he . . . fails to provide counselors with the full history of [the abuse and neglect] cases, including domestic violence and prior abuse of [her] older children." Moreover, the circuit court found that petitioner "failed to maintain stability[,] including housing and financial stability despite having sufficient income. . . . The parents fail[ed] to provide for their children's needs." Finally, the circuit court found that petitioner was "not bonding with her children, struggle[d] with mental health during visits, cancel[led] visits, [and] [was] not able to properly budget with sufficient income and government assistance." The court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental, custodial, and guardianship rights was necessary for the welfare of the children. Accordingly, the circuit court terminated petitioner's parental, custodial, and guardianship rights by its January 8, 2021, order. This appeal followed.[4]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[3]Petitioner did not include the transcript of the final dispositional hearing in the record on appeal. Therefore, the specifics of her testimony are not available to this Court.

[4]The father's parental, custodial, and guardianship rights were terminated below. According to the parties, the permanency plan for the children is adoption by the respondent foster parents, J.H. and J.H.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights and asserts that the court should have terminated her custodial rights only. According to petitioner, she "almost fully participated" in the services offered by the DHHR since the initial petition was filed in 2018. Petitioner insists that she consistently visited with the children, participated in parenting classes, and never indicated that she was averse to mental health treatment. Furthermore, she asserts that she had plans to secure suitable housing in North Carolina with the father of B.H. and C.H. in order to avoid the overdue utility bills that she accrued in West Virginia. Per petitioner's brief, "[o]nly terminating [her] custodial rights would have allowed [her] to follow[] through with her plans to secure adequate housing which would enable her to potentially ha[ve] her children placed back into her care and custody." Upon our review, we conclude that petitioner's argument is without merit.

First, petitioner's assertion that she "almost fully participated" in services offered by the DHHR is not supported by the record on appeal; the DHHR reported that petitioner was not participating in her improvement period in April of 2019 and July of 2019. Nevertheless, petitioner's level of participation is not determinative of the circuit court's final disposition. As we have held, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). We note that, despite her assertions on appeal to the contrary, the record demonstrates that throughout the proceedings, petitioner did not consistently visit with the children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Petitioner's failure to keep consistent visitations with her children was a significant factor weighing against her potential to improve and act in the best interests of her children.

Critical to the Court's analysis is a determination as to whether the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future was supported by the record. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental, custodial, and

guardianship rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) sets forth that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future when the parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." West Virginia Code provides that such conditions exist when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

W. Va. Code § 49-4-604(d)(3).

Here, the evidence shows that petitioner did not respond to a reasonable family case plan, as evidenced by the continuation of the conditions which threatened the health, welfare, or life of the children. Despite the DHHR's lengthy provision of services, the circuit court found that petitioner made "little to no progress" during the proceedings, despite possessing sufficient resources through government income and services. The record shows that petitioner failed to properly manage her resources, rendering her housing situation unstable and inadequate, and resulting in a loss of essential utilities and a dearth of necessities. The providers testified that petitioner was subject of an eviction notice as recently as August of 2020, and that she failed to provide necessities during visitations with the children. Even on appeal, petitioner asserts that she moved to North Carolina to avoid the utility bills that had become "impossible" for her to pay. Clearly, despite years of instruction, petitioner had not remedied these conditions. Additionally, petitioner failed to address the mental illnesses that interfered with her ability to care for the children, as found by the circuit court. The evidence showed that petitioner was aggressive toward providers and became easily agitated with the children. In light of petitioner's lack of progress in the case, the providers could not recommend that petitioner have unsupervised or overnight visitations with the children. This inability speaks volumes as to the level of progress of petitioner's ability to properly parent the children even after the provision of extensive services. Based on this evidence, we find no error in the circuit court's determination that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future.

We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

6

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). In that the circuit court correctly determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect, the court's final disposition—termination of petitioner's parental, custodial, and guardianship rights—was justified upon its fully supported findings. Further, we determine that petitioner's requested relief—essentially an indeterminate amount of time to make progress and remedy the conditions of abuse and neglect—is unconscionable under the facts of this case. Such an opportunity would not be in the children's best interests, and petitioner's proposed disposition disregards the children's need for permanency. As we have held,

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. Furthermore, "[e]nsuring finality for these children is vital to safeguarding their best interests so that they may have permanency and not be continually shuttled from placement to placement." *In re Cesar L.*, 221 W. Va. 249, 258, 654 S.E.2d 373, 382 (2007). Petitioner received services well over the maximum statutory time provided for parental improvement. *See* W. Va. Code § 49-4-610(9) ("[N]o combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph."). There is no authority to require a circuit court to take measures for parental improvement above and beyond those already provided to petitioner below. Accordingly, we find no error in the circuit court's final decision to terminate petitioner's parental, custodial, and guardianship rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 27, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton